GOODWIN, Circuit Judge, concurring:
While I concur in the result, I am unable to join the majority’s opinion. I write separately to express my belief that the majority discusses matters unnecessary to decide the case. The majority opinion erodes important First Amendment protections.
There is no dispute that the district court erred in granting defendant’s Rule 12(b)(6) *532 motion. Chandler and Depweg have stated a claim for which relief may be granted. To reach this decision, however, we did not have to reach out and create a comprehensive three-part categorical scheme for deciding all student speech cases.[1]
Unfortunately, the majority oversimplifies the case law and too readily disregards important factual distinctions. I am most troubled by the majority’s conclusion that the deferential Fraser standard applies to all “vulgar, lewd, obscene, and plainly offensive speech,” even if such expression occurs outside the context of an official school program or event.
The majority may have lost sight of the facts in Fraser. There, the Court held that a student delivering a vulgar, lewd and plainly offensive speech at an official school assembly could be punished by school authorities without violating his First Amendment rights. See Fraser, 478 U.S. at 683, 106 S.Ct. at 3164. Yet here, the majority concludes that the fact that the speech in Fraser was delivered at a school-sponsored event was not central to the Court’s holding, and that school administrators have wide discretion in suppressing speech that they generally consider
“vulgar, lewd, obscene, and plainly offensive,” regardless of the context. I am not prepared to join in this conclusion.
The Fraser Court was influenced, in part, by the captive nature of the audience. Id. at 677, 106 S.Ct. at 3161 (student attendance at the assembly was mandatory); see also L. Tribe, American Constitutional Law § 12-10, at 852 n. 14 (2d ed. 1988) (noting that the Court “employed'a modified version of the captive audience theory” in Fraser). In addition, the school’s interest in inculcating proper speech manners is surely higher in the context of a public speech in front of a crowded assembly than in the context of a private hallway conversation. Justice Brennan noted that Fraser’s speech “may well have been protected had he given it in school but under different circumstances, where the school’s legitimate interests in teaching and maintaining civil public discourse were less weighty.” Id. at 689, 106 S.Ct. at 3167 (Brennan, J., concurring).
Because the majority in this case concedes that the speech at issue is not within the parameters of either Fraser or Hazel-wood but is instead governed by Tinker,[2] it *533 was entirely unnecessary to address the issue; the majority's dicta amounts to nothing more than a preview, or worse, an advisory opinion. Therefore, I do not join in that part of the opinion.
The majority also gives credence to a mischievous notion that there exists a subclass of words that are “inherently disruptive.” Rather than merely disagreeing with the district court’s finding that the scab buttons were “inherently disruptive,” as the majority does, I would rather have this Court clarify that there is no authoritative doctrinal support for the existence of such a category. I believe it is unwise to invite would-be censors to imagine that there may exist a category of “inherently disruptive” words. The invention of such a category would invite future courts and litigants to circumvent the Tinker analysis. Moreover, I doubt that it would be either workable or desirable for judges to construct a list of words that one cannot say in school.
On remand, the district court should not read the majority opinion as an invitation to disregard clear Supreme Court precedent. Rather, the court should apply the Supreme Court’s Tinker analysis, which provides that students cannot be punished for merely expressing their views on campus unless school authorities could reasonably forecast that such expression will cause “substantial disruption of or material interference with school activities.” 393 U.S. at 514, 89 S.Ct. at 740.

. If lower courts need categorical guidance in determining how to approach student speech cases, they should look to the one implicitly provided by Justice White in Hazelwood rather than the one established by the majority here.
Justice White distinguished between (I) “a student’s personal expression that happens to occur on the school premises,” and (2) "educators’ authority over school-sponsored [activities] that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school.” 484 U.S. at 270-71, 108 S.Ct. at 569-70. In the first category, the more rigorous judicial scrutiny of Tinker is applied. Generally, school authorities must show that they could reasonably forecast that the student’s expression would cause substantial disruption or would materially interfere with school activities in order to punish such expression without interfering with the student’s First Amendment rights. In the second category, judicial scrutiny of the actions of school authorities is far more deferential since the school must be able to set ”high[er] standards for the student speech that is disseminated under its auspices." Hazelwood, 484 U.S. at 271-72, 108 S.Ct. at 570. For cases falling within this second category, school authorities may limit student speech "so long as their actions are reasonably related to legitimate pedagogical concerns.” Id. at 273, 108 S.Ct. at 571.

. Actually, the majority only concedes that Fraser does not apply ”[a]t this stage in the litigation,” suggesting that further development of the record may reveal that the term "scab,” as used here, was either "vulgar,” "lewd," "obscene,” or "plainly offensive" within the meaning of Fraser. I cannot conceive how these facts could ever be equated with those in Fraser.
First, this case clearly involves political speech, and Chief Justice Burger expressly relied on the "marked distinction between the political ‘message’ of the armbands in Tinker and the sexual content of Fraser's speech” in fashioning the Court’s more deferential approach in Fraser. 478 U.S. at 680, 106 S.Ct. at 3162-63. Second, I object to the majority’s implicit suggestion that speech need only be either "vulgar,” "lewd,” "obscene,” or "plainly offensive" in order to trigger their more deferential analysis. See Opinion at 530. Again the majority misreads Fraser. We must be careful not to stray from the facts of that case, lest we entirely circumvent the Court's clearly established Tinker analysis. Certainly the majority does not suggest that student political discourse which some school administrator might consider *533 "plainly offensive” is entitled to only minimal First Amendment protection.